And it's Mr. Scheidler Yes, Mr. Scheidler, and may it please the court, I'm Glenn Scheidler, I represent Joseph Riccelli and Randolph Lowe, the inventors of this application. I wanted to say it's a pleasure and honor to be here, you have a wonderful courtroom. We're going to talk today, what's that? We think so. Oh, it's fantastic. And it was a joy to be here, at least up to this point, we'll see what happens from here. But anyway, the present invention that we're talking about, it is a three-layer house wrap. It is three-layers construction that has an outer drainage plane, it has a barrier layer, and it has a very specific low-density polyethylene foam that's made by a process that gives it a superior insulating properties and allows it to be made very thin. And so the claims define the entire thickness of this structure. And that's all set forth in the independent claims. What we're here about is the rejection In the blue brief at 18 and 19, you argue that a person of skill reading Maynard, quote, would be directed to use the 15-layer example actually used in practice with the clothing shown in figures one to two, rather than the extreme example of the two-layer construct. Now we've said in, among other things, in Ray Applied Materials, a reference must be considered for everything that it teaches, not simply the described invention or preferred embodiment. How do you respond to that statement of law? And what evidence supports your proposition that a person of skill would limit their reading of Maynard to the preferred embodiment? I don't want to say that we're limiting it to the preferred embodiment. Is it limited to a 15-layer structure? No, I don't think that it is. But one of ordinary skill in the art, reading this reference, would not be... What's your evidence in the record that tells me that? Oh, let's go to page three of the reference, the Maynard reference, where it talks about buoyancy and thermal insulating properties can be readily varied simply by varying the numbers of layers of sheet material included in any particular article. In a multi-layer construction, not only does each individual layer contribute to the buoyancy and thermal insulation, but the buoyancy and thermal insulation of an article as a whole is improved by pockets of air trapped between the individual layers of the sheet material. So one of ordinary skill in the art, looking at this reference, would be led, if you're trying to make, in this case, a house... What evidence supports that? Do you have an affidavit, for example, that interprets it? Or are you just giving me attorney arguments? I'm reading that the evidence is in the references themselves. And in this example, there is no teaching of forming any article with the two-layer sheet material. Maynard says the essence, I'm emphasizing that, of the present invention is the use of foam-based sheet material, ellipses, with at least one protective layer, which seems to indicate that the essence of Maynard is a two-layer material. How do you overcome that? I think that you're correct that the essence of that is using a two-layer structure. And it's using a two-layer structure having a foam layer and a protective backing layer. And when you utilize this teaching to form an insulating material, it teaches using multiple layers, doesn't have to be 15, but it teaches using multiple layers so that you can adjust the insulating properties to where you want to get it. And I believe that there is simply no teaching in here whatsoever of forming anything out of the single sheet. It talks about how to make the sheet of the invention, and the sheet has either one protective layer or two protective layers on either side of it. And then it talks about how you use that to form some sort of structure. And in principle, it talks about making clothing, but it's certainly not limited to clothing. It talks about a number of other applications. And in these applications, you're going to be using a multi-layer structure because that's what it teaches. The point of improving the thermal insulation is not only the foam, not only the expanded cells of the low-density polyethylene foam, but also the air trap in between the layers. The patent officer's position is to ignore those expressed teachings in that reference. But that's not the end of our arguments there. That's just in the primary reference. They also ignore the teachings of the secondary and third references as well. But in the rejection, they rely on this one layer to try to form a house wrap. There's no teaching of ever forming any structure with only using the single sheet of the Maynard reference. But regardless, they go to a secondary reference and replace the polyethylene foam of this reference with a polyethylene foam made according to a specific process, which the applicants had spelled out in our application. And that's the Shin reference, the third reference that they use. They bring in the Shin reference to say, this is how you would make polyethylene foam. We don't disagree with that concept because this type of low-density polyethylene foam is what's used in the present invention. That's what we're utilizing to give you superior results. But when you read the primary reference for the low-density polyethylene foam, it expressly states that when you're forming material such as tents, sleeping bags, and blankets, you're which is about 196 mils, which is outside of the applicant's range. You again have to ignore the express teachings of that reference to create this combination. But that's, again, that's not where they go, where we end our argument here. The two references that show the drainage plane, the drainage plane isn't shown in the primary reference. Drainage planes are certainly known in house wraps. And the two references that show that, the Shepard reference, I believe it is, and the Lubeker reference, sorry about that, I have trouble with that one. In those two references, they teach a two or a three-layer drainage plane. And we're combining that with the admitted primary reference that has a backing layer for support and the low-density polyethylene foam. We have a two or three-layer structure being combined with a two or three-layer structure. You're not going to get a three-layer structure of the present claimed invention. Two plus two doesn't equal three. So in every combination that they're putting here, the patent office position is ignoring the express teachings of these references in trying to reconstruct the present claimed invention. The only thing guiding them are the applicant's claims. When we, the problem gets worse when you get to the dependent claims. In the dependent claims, the thickness of our invention is 30 mils or 40 mils. It is several times smaller than what the secondary reference teaches should be the thickness of a foam layer when you're using it to construct sleeping bags, blankets, and similar equipment. At 30 to 31 in the blue brief, you challenge the PTAB's determination that Tye teaches the continuous layer of adhesive on the basis that Tye's residential foam sheathing or insulation panels are blocks and are not adhesive layers for use in a house wrap. The PTAB declined to address that argument as a new argument not raised until rehearing. Show me where in the record you presented that argument to the PTAB before your request for rehearing. I do not have a citation to the arguments. My arguments on the Tye reference that are still one of ordinary skill in the art, looking at that reference would not combine this in a way to come up with the claimed invention. In fact, when you look at the Tye reference as well, it also teaches a panel structure, not a house wrap. The difference between a panel insulation and a house wrap is one is a flexible structure that's wrapped around, other ones are sheets of blocks of insulation. When you look at Tye as well, in that reference, when you're looking at this reference as a whole, it teaches having the insulation followed by a drainage plane, followed by a barrier layer. The drainage plane is 40, and the barrier layer is on the outside. You're not answering my question, it's not helping you. I'm sorry, I do not have, I cannot cite my arguments from... Do you concede that the PTAB was correct, that it was a new argument? No, no, I'm sorry, I do not. We've been making consistently the same argument all the way through, that one of ordinary skill in the art, looking at these references, they would not be, there is no teaching or suggestion to combine them in the manner that has been set forth. Now, I may have articulated my arguments differently, but it is the same argument all the way through. You mean it's the same result? No, I mean it's the same argument. Okay. That's what you think, that's fine. Now, you're under your rebuttal time, you can go on. I'm sorry, I will reserve the rest for rebuttal, thank you. Okay. May it please the court, to address the tie waiver issue that you just brought up, in the appeal brief, appendix 349, was where the argument was made, and as you can see from that paragraph, there was not an additional argument about tie, it just said that there is a combination of additional reference, and talked about the thickness, and didn't make this sort of non-analogous art argument. Hiroselli himself is admitting that this is a simple invention, and that each of the claims layers is taught by the prior art. The independent claims require a reinforcing grid for drainage, a barrier film, and a foam, and additionally claim the total thickness, and a particular insulating value. Substantial evidence supports the board's rejections here. The board started with the Maynard reference, which teaches a very versatile reference that can be used for many different uses, and teaches at least two layers of foam, and actually the evidence pointed to, to say that Maynard teaches a 15 layer, actually shows on 462, what my opponent pointed to, says that you can vary the number of layers, so it's not a teaching that the preferred is 15, the teaching is that you can use as many layers as is necessary. What page of the record are you referring to? 462, and the first paragraph, where my opponent pointed to the fact that said buoyancy and thermal insulating properties can readily be varied simply by varying the number of layers. And then additionally on that page, in the one, two, three, fourth paragraph, it talks about the foam comprising any kind of foam material that has buoyant or thermally insulating properties, so it would be natural to use a similar low-density polyethylene foam, such as shin, to arrive at the specific claimed R value. You're saying that the language at the top of page three shouldn't be read to understand that every embodiment, you'd want to have tons of layers, it's simply that you could have any different number of layers depending on the desired insulation or buoyancy you're seeking to achieve? Correct, and the only layer that is talked, the only layers that are talked about as being sort of the heart of the invention, I think as Judge Wally pointed to before, was just the foam layer with the film, so you're starting with a smaller number of layers, so basically the reference is teaching somewhere between two and 15, but that you can easily change those number of layers. At least two. Right. Then the next reference, the Shepard reference, also uses three layers of a house wrap. The Shepard reference has a drainage layer, a film layer, and a foam layer, and is being used just simply to teach that you would add a grid layer, and the same with the Altman and Tai references. The Altman teaches for the dependent claim that you would use, that PTFE is desirable, and Tai teaches the use of adhesives. Going through all of those steps, there's clearly substantial evidence for the board's rejection. If there's no further questions, I'll yield the remainder of my time. Don't seem to be. Thank you. Just a quick point for rebuttal. It seemed that we seemed to agree that the primary reference teaches at least two layers, but each, it's at least two sheets, and each sheet has two layers. Each layer here, each sheet material, has insulation and a backing layer, and in order to create that, the prior art specifically says, look, you can vary the number of sheets you have in each article, and so what you're talking about, if we agree that there are at least two of these sheets, then you have at a minimum a four-layer structure, which is far different than, we haven't even added the drainage plane. It's far different than the three-layer structure of the present invention. Any questions? Thank you, counsel. The matter will stand submitted. Thank you. We're in recess. Thank you. All rise. The honorable court is adjourned until tomorrow morning. It's at o'clock a.m.